O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVON AYRAPETOV,<br><br>Petitioner,<br><br>v.<br><br>DAVID MARIN et al.,<br><br><br><br>Respondents. | Case No.: 5:26-cv-00599-MEMF-PVC<br><br>**ORDER GRANTING IN PART PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. NO. 2]** |

Before the Court is the Ex Parte Application for Temporary Restraining Order and Motion Preliminary Injunction filed by Petitioner Levon Ayrapetov. Dkt. No. 2 ("Application"). For the reasons stated herein, the Application is GRANTED IN PART: the Court grants the Temporary Restraining Order, and issues an Order to Show Cause why a Preliminary Injunction should not issue, but does not grant a Preliminary Injunction at this time.

1

## I.    Background

### A.  Factual Background[1]

Petitioner Levon Ayrapetov is a native and citizen of the USSR, who entered the United States on January 8, 1992. Dkt. No. 1 ("Petition") at 2. In 1999, Ayrapetov was convicted of robbery under California Penal Code Section 211. *Id.* In 2011, Ayrapetov was convicted cannabis cultivation and possession of a firearm. *Id.* Due to these convictions, Ayrapetov received a final order of removal on January 1, 2015. *Id.*

After eleven (11) months in ICE custody, Ayrapetov was released on supervised release because ICE had failed to obtain any travel document to the USSR, Armenia, and Azerbaijian. *Id.* Since Ayrapetov's release, he has complied with the terms of his supervised release and has made all his scheduled check-ins except one in 2024 due to his mother suffering a stroke. *Id.*; Reply at 4.

After missing the one check-in in 2024, ICE placed Ayrapetov on electronic monitoring for six months. Reply at 4. Ayrapetov complied with his electronic monitoring and was scheduled to have his electronic monitor removed on February 2, 2026. Petition at 2.

On February 2, 2026, Ayrapetov was asked to report to the ICE Field Office in Downtown Los Angeles. *Id.* Upon his arrival, Ayrapetov was immediately arrested and redetained. *Id.* Ayrapetov was never provided notice regarding the reasons for the revocation of his supervised release. *Id.* at 2-3. And Ayrapetov was not given an informal interview to contest the revocation. *Id.* After his redetention, ICE began to ask Ayrapetov to sign travel documents related to his removal. Reply at 4.

As of the filing of this Petition, Ayrapetov remains in ICE custody. Petition at 2.

### B.  Procedural History

---

[1] Unless otherwise indicated, the following factual background is derived from Ayrapetov's Petition for Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

2

On February 9, 2026, Ayrapetov filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. Petition. Ayrapetov also filed an Ex Parte Application for Temporary Restraining Order and Motion for Preliminary Injunction on February 9, 2026.[2] Application.

On February 12, 2026, the Court ordered the Respondents to file a response to the Application by February 17, 2026, at 5pm. Dkt. No. 8. The Court's Order also ordered Ayrapetov to file a Reply by February 18, 2026, at 5pm. *Id.* On February 17, 2026, Respondents filed an Opposition. Dkt. No. 13 ("Opposition"). On February 18, 2026, Ayrapetov filed a Reply. Dkt. No. 14 ("Reply").

## II.    Applicable Law

### A.  Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

---

[2] The Court notes that it appears that Petitioner did not comply with Local Rule 7-19.1 in filing his Application as the Application does not include the contact information for the opposing party, as well as a declaration of the movant's efforts to contact other counsel. L.R. 7-19.1. Given that the Defendant is pro se, detained, and seeking emergency relief, and in light of the fact that Respondents do not argue that the Application should be denied for failure to comply with Local Rule 7-19.1, the Court will address the Application in the merits.

injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)).[3] This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

---

[3] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023)

A different framework applies, however, once an immigrant has been "released under an order of supervision." 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(3).

### III.   Discussion

#### A.  The Court Has Jurisdiction Over This Matter.

Respondents argue that, "[t]o the extent Petitioner is challenging his Removal Order, this Court lacks jurisdiction pursuant to 8 U.S.C. § 1252(g)," and that Sections 1252(a)(5) and 1252(b)(9) also bar review. Opposition at 2-5. Ayrapetov counters that this Court has jurisdiction under 8 U.S.C. § 2241 because Ayrapetov is not seeking to challenge his final removal order. Reply at 12-13. For the reasons below, this Court finds that Section 2241 grants this Court jurisdiction, and none of Respondents' proffered jurisdictional bars apply here.

As this Court has explained *supra*, it lacks authority to enjoin the Government or its subdivisions to "take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA. *Aleman Gonzalez*, 596 U.S. at 550. But it may still enjoin the operation of statutory provisions as they apply to an individual noncitizen in removal proceedings. *Id.* Put another way, the Supreme Court has recognized that this Court's jurisdiction to enter individual habeas relief, where appropriate, does not improperly bear on the Government's ability to carry out immigration policy decisions.

As a general matter, in arguing this Court lacks jurisdiction, Respondents appear to inaccurately describe the question posed to this Court. They note, and then justify, that the Court is stripped of jurisdiction over challenges to the commencement of "removal proceedings." Opposition at 4. But this case does not challenge the execution of a final removal order—the Petition merely alleges that, when Respondents redetained Ayrapetov, they did not afford him the process he was

due. Petition at 4. That inquiry is entirely independent of whether the government may execute the final removal order.

With this framework in mind, the three statutes that Respondents argue prevent this Court from exercising jurisdiction are inapposite.

Section 1252(g) states that no court may hear a nonimmigrant's case "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against an [undocumented person]." Respondents suggest that this statute bars any District Court claims—in habeas or otherwise—that would prevent or delay the government from executing that final removal order. Opposition at 3-4. But the Supreme Court has rejected "the unexamined assumption that § 1252(g) covers the universe of deportation claims," and has instead endorsed a "much narrower" read that is confined to the "three discrete actions" listed above. *Reno*, 525 U.S. at 482. With this reading in mind, Section 1252(g) does not apply here. Neither the instant Application nor the Petition stem from (or challenge) the commencement of proceedings, adjudication of a case, or the execution of a removal order. Instead, they seek that this Court find that the *manner* in which Ayrapetov was redetained was in violation of his constitutional and statutory protections. Petition at 4. Respondents cite no authority for their proposed broad reading of Section 1252(g), particularly the idea that it would prevent *any* claim that had the effect of delaying the government's execution of a final removal order. And, even if they did, this Court is not inclined to find that this argument would be relevant: Nothing in this Court's ruling today (or Ayrapetov's requested relief) prevents Ayrapetov's redetention or removal.

Nor do Respondents' other two suggested jurisdictional bars operate in this case. Section 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." And Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." The Ninth Circuit has clarified that these two provisions only "channel judicial review *over final orders of removal* to the courts of appeals." *J.E.F.M. v. Lynch*, 837 F.3d 1026,

1031 (9th Cir. 2016) (emphasis added). And, again, Ayrapetov has not requested this Court to review his removal order itself. *See generally* Petition. Neither the Petition nor the TRO before this Court contest the basis of the final removal order. Nor does this Court intend to call into question the merits of the Respondents' reasons, or the basis of the Respondents' authority, to remove Ayrapetov.

In sum, this Court concludes that it has jurisdiction to hear the habeas petition and consider the granting of injunctive relief as a preliminary matter, if appropriate.

### B. Ayrapetov Provides a Sufficient Legal Basis for Relief.

Respondents argue that Ayrapetov's Application is facially flawed as it "assumes with no evidence [] or factual support that he would be removed unlawfully to an undesignated third country and without notice and an opportunity to be heard." Opposition at 5.

Although the Application is brief, it does argue the factual and legal basis for the requested relief because it specifically references the claims set forth in Ayrapetov's Petition, and the Petition argues why Ayrapetov is likely to succeed on the merits for Ayrapetov's claims. *See* Application at 1-3; *see generally* Petition. Ayrapetov subsequently included additional exhibits and discussion in the Reply. *See generally* Reply. Therefore, the Court holds that Ayrapetov provides a sufficient legal basis for relief.

### C. Applying the *Winter* factors, Ayrapetov Is Entitled to a Temporary Restraining Order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Ayrapetov is entitled to a temporary restraining order. Having determined below that Ayrapetov is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

Ayrapetov advances two grounds upon which a temporary restraining order should be granted. First, Ayrapetov argues that ICE unequivocally failed to provide notice or an opportunity to be heard prior to Ayrapetov's redetention. Petition at 4; Reply at 6. Second, Ayrapetov asserts that there is no good reason to believe that Ayrapetov's removal to the USSR, Armenia, or Azerbaijan

will occur in the reasonably foreseeable future. Petition at 5-6; Reply at 7-8. As such, Ayrapetov alleges that Respondents violated 8 U.S.C. §§ 241.13(i)(2)-(3), 241.4(I). Petition at 4.

The Court addresses these grounds below.

  i. <u>The first *Winter* factor, likelihood of success on the merits, is met with respect to both grounds.</u>

   1. *There is no significant likelihood of Ayrapetov's removal to the USSR, Armenia, or Azerbaijan in the reasonably foreseeable future.*

On his first ground, Ayrapetov argues that Respondents have failed to establish that her removal to the USSR, Armenia, or Azerbaijan is likely to occur in the reasonably foreseeable future. Petition at 5-6; Reply at 7-8. Respondents counter, stating that they have applied for travel documents and that Ayrapetov "has refused to participate in obtaining travel documents or otherwise assist in his removal," thereby "adding several weeks to his detention." Opposition at 1.

In *Zadvydas*, the Supreme Court established that a six-month period of detention was presumptively reasonable. 533 U.S. at 701. Thus, in order to demonstrate a likelihood of success on the merits, Ayrapetov has to indicate that there is good reason to believe that there is no likelihood of removal in the near future. *Id.* However, because Ayrapetov is an immigrant released under an order of supervision, Section 241.13 codifies how *Zadvydas* should apply:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, *where the [noncitizen] has provided <u>good reason to believe</u> there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future.*

8 C.F.R. § 241.13(a) (emphasis added). This therefore indicates that the subsection Ayrapetov relies upon—241.13(i)(2)-(3)—only applies where the noncitizen has made the showing of "good reason to believe there is no significant likelihood of removal." And this mirrors *Zadvydas*: "[a]fter [the] 6-month period, once the [non-citizen] provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Ayrapetov has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Under Section 241.13(i)(2), Respondents bear the

burden to establish that there is a significant likelihood that Ayrapetov may be removed in the reasonably foreseeable future.

As detailed by Ayrapetov, ICE, in 2015, tried and failed to remove Ayrapetov to: (1) the USSR because the USSR was dissolved in 1991; (2) Armenia because Ayrapetov is not recognized as an Armenian citizen; and (3) Azerbaijan because Ayrapetov is not recognized as an Azerbaijan citizen. Petition at 1 n.1, 5-6. Notably, Respondents, in their Opposition, do not detail efforts taken toward Ayrapetov's removal. *See generally* Opposition. They only indicate that Ayrapetov's removal has been delayed due to Ayrapetov's refusal to assist Respondents' removal efforts.[4] Opposition at 1. And that they believe that they can obtain travel documents. Dkt. No. 13-1 ¶ 8.

Although Ayrapetov's current length of detention is not excessive, as discussed by Respondents, Petition at 2, Ayrapetov's circumstances and background, raise genuine concerns as to whether his removal is reasonably likely to occur in the future. The record demonstrates that Respondents have previously failed to remove Ayrapetov to the intended countries—the USSR, Armenia, and Azerbaijan—in 2015. Dkt. No. 13-1 ¶¶ 4-8; Petition at 5-6; Opposition at 1. During that period, Ayrapetov remained in custody for seven and a half months. Reply at 9.

Further, the countries Respondents attempted to remove Ayrapetov to in 2015 have now either been dissolved or explicitly declined to accept Ayrapetov in 2015. Dkt. No. 13-1 ¶¶ 6-8. Respondents have not provided any timeline for when travel documents should be expected. Reply at 7. As such, there is no significant likelihood of Ayrapetov's removal to the USSR, Armenia, or Azerbaijan in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. And Respondents have not indicated a travel document is forthcoming in the near future. In sum, based on the record, it does not appear that removal is reasonably foreseeable. *Id.*

This Court thus finds that Ayrapetov has demonstrated the likelihood of success on the merits of the question of whether his detention is unlawful under *Zadvydas* on this ground.

        2. *Ayrapetov was redetained without notice and was not provided an opportunity to be heard.*

On this ground, Ayrapetov argues that Respondents failed to provide adequate notice or an opportunity to be heard prior to Ayrapetov's redetention. Petition at 4; Reply at 6. Respondents claim that they are authorized to "arrest and detain noncitizens to effectuate final removal orders." Opposition at 2.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Respondents do *not*, in their Opposition, claim that Ayrapetov was: (1) provided notice of his redetention; or (2) given an opportunity to be heard prior to his redetention. *See generally* Opposition. In light of *J.G.G.*, it appears that the applicable regulations, namely 8 U.S.C. § 241.13(i)(3) and 8 U.S.C. § 241.4(*l*)(1) are the means by which ICE has determined it will meet the due process rights of putative detainees. The Respondents provide no reason that this Court should find otherwise, and this Court declines to take the extraordinary position that these individuals are not entitled to notice and an opportunity to be heard in the absence of clear direction—in binding law, in the relevant statutes, or in the applicable regulations—to that effect. *See generally* Opposition. Thus, the Court holds that Respondents' admitted failure to provide Ayrapetov notice and an opportunity to be heard constitutes an unequivocal violation of Section 241.13(i)(3).

This Court's conclusion is consistent with that of other district courts. Particularly instructive is the district court's approach in *McSweeney v. Warden of the Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the Court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. In *McSweeney*, it appears that the petitioner had received *adequate* notice, unlike Ayrapetov; there, the petitioner was sent a notice of the reasons for revocation of his release. *Id.* at *6. Still, because there was no interview opportunity following that notice, the Court found that the procedural deficiencies constituted violations of procedural due process. *Id.* In its

words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

Today, the Court must determine whether Ayrapetov is likely to eventually prevail on the merits. For the reasons described above, this Court finds that she is likely to succeed on the merits under both of her arguments for habeas relief. In sum, the first *Winter* factor is met here under both of Ayrapetov's arguments for habeas relief.

ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Ayrapetov must demonstrate a likelihood that she will suffer irreparable harm without a temporary restraining order. This Court finds that she has done so.

As a threshold matter, Ayrapetov has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Respondents have provided no evidence that Ayrapetov's detention will not be prolonged or that Ayrapetov's removal is likely to occur in the reasonably foreseeable future. *See generally* Opposition. Further, Respondents have failed to comply with the legal process that is due to her as a detained noncitizen. *J. G. G.*, 604 U.S. at 673. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Ayrapetov's ongoing detention of indeterminate length—which may lead to a deportation sometime in the future to an undetermined country—inherently risks his irreparable harm, as it is not clear when he will be processed, released, or removed. Ayrapetov's harm is compounded by: (1) his separation from his wife and children; (2) his absence from the operation of his business; and (3) the potential public abuse he will receive due to ICE publicizing his redetention on social media platforms. Petition at 2; Reply at 3, 11-12; *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir.2001).

Thus, as this Court has already found that Ayrapetov has a sufficient likelihood of success on the merits of both of his challenges to his current detention—one of which has a basis in Ayrapetov's constitutional rights—this Court finds the second *Winter* factor is met.

      iii.   The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.

When, as here, the nonmoving party is a Respondents entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Ayrapetov's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities does appear to tilt strongly in Ayrapetov's favor. The Court notes that the Government has a strong interest in the enforcement of federal immigration law. However, the Respondents have failed to comply with binding authorities, resulting in the violation of Ayrapetov's constitutional rights against unlawful detainment. Petition at 4; Reply at 12. "'[I]t is clear that it would not be equitable or in the public's interest to allow the [Respondents] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Given Ayrapetov's unlawful detention, and without any reason to believe Ayrapetov's removal or release will occur in the reasonably foreseeable future, the Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

Accordingly, the third and fourth *Winter* factors are met here.

//

//

//

12

## IV.    Conclusion

For the foregoing reasons, the Application is GRANTED IN PART. Ayrapetov's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1.   Respondents are ORDERED to release Ayrapetov from custody (and return to him his personal belongings) within forty-eight (48) hours,[5] and they may not redetain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;

2.   Respondents are enjoined from relocating Ayrapetov outside of the Central District of California pending final resolution of this matter;

3.   This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.

   a.   Respondents' brief is due at 5 PM on Wednesday, February 25, 2026. Ayrapetov may file a response brief by Friday, February 27, 2026.

   b.   The parties may stipulate to a different briefing schedule via joint stipulation filed by 5 PM on Monday, February 23, 2026. Should the parties wish to extend either briefing deadline past Friday, March 6, 2026, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.

   c.   The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

---

[5] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

13

4.  The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by March 2, 2026.

5.  The Court waives the bond requirement pursuant to Federal Rule of Civil Procedure 65(c) as to Ayrapetov.

IT IS SO ORDERED.

Dated: February 20, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

14